UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CATHERINE M. LOPIENSKI, | : | Civil Action No. 07-4519 (FLW) |
| Plaintiff, | : | |
| v. | : | OPINION |
| CENTOCOR, INC. et al., | : | |
| Defendants. | : | |

**WOLFSON**, United States District Judge:

Presently before the Court is Plaintiff Catherine M. Lopienski's ("Plaintiff") motion to remand her claims against Defendants Centocor, Inc. ("Centocor, Inc."), Johnson & Johnson ("J&J"), Ortho-McNeil Pharmaceutical, Inc. ("OMP"), and Johnson & Johnson Pharmaceutical Research and Development, LLC ("PRD")(collectively, "Defendants") to New Jersey Superior Court. Defendants removed this case to this Court asserting that Plaintiff fraudulently joined J&J, OMP and PRD to prevent removal since one or more defendants would then be New Jersey citizens. For the reasons set for below, Plaintiff's motion is **DENIED**.[1]

## BACKGROUND

This is a product liability, consumer fraud and express warranty action in which Plaintiff alleges that she was injured by the prescription medicine Remicade. Remicade is a prescription drug used in the treatment of rheumatoid arthritis, Crohn's disease and other serious medical conditions.

---

[1] While the Court received Plaintiff's motion papers and Defendants' opposition papers, Plaintiff has not filed a reply brief.

Plaintiff, an Ohio resident, alleges that she was prescribed Remicade on August 16, 2004, for the treatment of her rheumatoid arthritis, and that following her use of Remicade, she "suffered physical illness and injury, including but not limited to histoplasmosis and pancytopenia." Compl. at ¶ 24. Plaintiff claims that Centocor, J&J and OMP "designed, created, manufactured, packaged, labeled, distributed, marketed, sold, promoted and/or advertised Remicade, and/or controlled such processes." Id. at ¶ 20. Plaintiff further claims that PRD "provided the Global Safety Officer for Remicade and performed drug safety and surveillance functions for the product, including communications with health care providers and consumers concerning reports of adverse events." Id. at ¶ 21. Based on these allegations of harm, Plaintiff asserts claims for compensatory and punitive damages pursuant to strict liability, negligence, fraud and consumer fraud law, that are governed by the New Jersey Product Liability Act ("NJPLA"), N.J.S.A. 2A:58-C1, et seq.[2], New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, et seq., and law of express warranty.

There is no dispute that the Pennsylvania-based corporation, Centocor, manufacturers Remicade, and it conducted the regulatory process that led to the approval of the drug by the Federal Food and Drug Administration. There is also no dispute that Centocor's offices and facilities in the

---

[2] The following counts in Plaintiff Complaint are subsumed by the NJPLA: First Count of Negligence; Second Count of strict liability in tort; Third Count of Products Liability pursuant to the NJPLA; Fourth Count of strict liability for failure to warn; Fifth Count of breach of implied warranty; Seventh Count of Negligent Misrepresentation; Eighth Count of Fraudulent Misrepresentation; Ninth Count of Consumer Fraud pursuant to NJCFA; and Tenth Count of fraud by concealment action in her Complaint are subsumed by the NJPLA. In enacting the NJPLA, the New Jersey Legislature expressly intended to consolidate all products liability claims into one single statutory cause of action. Herman v. Sunshine Chem. Specialties, Inc., 133 N.J. 329, 335 (1993). As such, the NJPLA subsumes all causes of action for physical injury caused by a product, including negligence claims. Tirrell v. Navistar Int'l Inc., 248 N.J. Super 390, 398 (App. Div.), cert. denied, 126 N.J. 390 (1991); Brown v. Phillip Morris Inc., 228 F.Supp. 2d 506, 517 (D.N.J. 2002)(the NJPLA subsumes the plaintiff's common law causes of action, including those grounded in fraud); Repola v. Morbark Indus. Inc., 934 F.2d 483, 492 (3d Cir. 1991).

United States are located in Pennsylvania. Based on the information provided by Defendants, not disputed by Plaintiff, Centocor developed and obtained approval to market Remicade for the treatment of Crohn's disease before it became a wholly-owned subsidiary of J&J in October 1999. Mr. Schaible Aff. at ¶¶ 3-4. However, Plaintiff asserts in her Complaint that Centocor is not the only entity that manufactures, markets and sells Remicade, and that J&J, PRD and OMP also assist Centocor.

Plaintiff filed her Complaint on August 9, 2007, in the Superior Court of New Jersey, Middlesex County. Centocor was served on August 24, 2007. Defendants timely removed this action from state court on September 20, 2007, based upon the contention that Plaintiff fraudulently named J&J, PRD and OMP to prevent removal since one or more defendants would be New Jersey citizens. See 28 U.S.C. §§ 1441(b) and (c). In turn, Plaintiff filed the instant motion to remand this case to state court.

## DISCUSSION

### I.      Standard of Review

In a removal matter, the defendant seeking to remove bears the burden of showing that federal subject matter jurisdiction exists; that removal was timely filed; and that the removal was proper. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991). Removal statutes are to be strictly construed against removal, and all doubts are to be resolved in favor of remand. Shamrock Oil and Gas Corp. v. Sheets, 313 U.S. 100, 104 (1941); Brown v. Francis, 75 F.3d 860, 865 (3d Cir. 1996).

However, removal is not defeated by the naming of defendants, whose presence would prevent remand, where those defendants have been fraudulently or nominally joined in the action.

3

Blackburn v. UPS, Inc., 179 F.3d 81, 90 n.3 (3d Cir. 1999); see also Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1009 n.2 & 1010 (3d Cir. 1987).  Indeed, a civil action in which jurisdiction is based on diversity of citizenship may be removed "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  Blackburn, 179 F.3d at 90 n.3 (citing 28 U.S.C. § 1441(b)).[3]

Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment."  Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992)(quoting Boyer, 913 F.2d at 111).  A party is nominal when there is no possibility the plaintiff can establish a cause of action against him, and the defendant is not indispensable.  Michaels v. New Jersey, 955 F. Supp. 315, 319 (D.N.J. 1996).  The propriety of removal is to be determined based upon the facts as they are alleged in the complaint.  Steel Valley, 809 F.2d at 1010.

If the court determines that the joinder was "fraudulent," it can "disregard, for jurisdictional purposes, the citizenship of certain [] defendants, assume jurisdiction over a case, dismiss the [] defendants, and thereby retain jurisdiction."  In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006)(citing Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999) (citation omitted)). If, however, the court determines that it does not have subject-matter jurisdiction over the removed action because the joinder was not fraudulent, it must remand to state court. See 28 U.S.C. § 1447(c). If warranted, the

---

[3] 28 U.S.C. § 1441(b) states: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

court's "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id.; In re Briscoe, 448 F.23d at 216.

## II. Plaintiff's Claims under the NJPLA and the NJCFA

J&J, OMP, and PRD must be Remicade's "manufacturer[s] or seller[s]," to be considered proper defendants under the NJPLA. N.J.S.A. 2A:58-C-3; see also Brown v. Monmouth County Sheriffs Dep't of Corr., No. 02-5591, 2005 U.S. Dist. LEXIS 36433, at *7 (D.N.J. Dec. 22, 2005) ("The NJPLA applies to only product sellers and manufacturers").

> The NJPLA defines "manufacturers" as (1) any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product; (2) a product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale; (3) any product seller not described in paragraph (2) which holds itself out as a manufacturer to the user of the product; or (4) a United States domestic sales subsidiary of a foreign manufacturer if the foreign manufacturer has a controlling interest in the domestic sales subsidiary.

Id. at 7-8 (citing N.J.S.A. 2A:58C-2). The NJPLA defines "product sellers" to include:

> any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce.

Brown, 2005 U.S. Dist. LEXIS 36433, at *8 (citing N.J.S.A. 2A:58C-2).

Similarly, under the NJCFA, in order to properly join J&J, OMP and PRD as defendants, Plaintiff must have alleged that these entities are "persons" within the definition of NJCFA, and that they engaged in an unlawful practice to use an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise." N.J.S.A. 56:8-1(d). "Person" is defined to include any natural person, partnership,

5

corporation, or company. Id. "Sale" is defined to include "any sale rental, or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell rent, or distribute." N.J.S.A. 56:8-1(e). "Merchandise" is defined as "any object, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

Plaintiff has not cited to any authority to show that, generally, liability under the NJCFA extends to parent companies.[4] Nevertheless, although the NJCFA does not expressly address this, from the definitions under the statutes set forth above, since any "person" is liable under the NJCFA who made the "sale" of the "merchandise," it follows logically that these defendants would also be subjected to liability under the NJPLA as a "manufacturer" or "seller" of the product. Accordingly, for the purposes of analyzing the pertinent issues in the motion before the Court, the determination of whether defendants J&J, OMP, and PRD are necessary defendants under the NJPLA and NJCFA involves the same legal analysis. Now, the Court will turn to each of the defendant entities.

  **A.**  **Johnson & Johnson**

Plaintiff alleges several nexuses of interaction between defendant J&J and Centocor to establish the propriety of naming J&J as a defendant . See Steel Valley, 809 F.2d at 1010 ("Ruling on whether an action should be remanded to the state court from which it was removed, the district court must focus on the plaintiffs' complaint at the time the petition for removal was filed") (citation omitted). Specifically, Plaintiff alleges that J&J owns Centocor as a wholly owned subsidiary; creates standards, policies, and procedures for Centocor; lists sales under pharmaceuticals in general;

---

[4]Defendants, in their opposition brief, raise the issue that Plaintiff is attempting to pierce the corporate veil and hold J&J liable as a parent company. However, after reviewing the Complaint, Plaintiff does not explicitly allege such theory, nor does she argue such theory in her motion. Accordingly, the Court need not address the issue.

files 10-Q with the SEC regarding revenues generated from Remicade; funnels employees from J&J to Centocor; and provides documentation preservation practices for Centocor's legal department.

Even taking these allegations as true, the Court finds these nexuses between J&J and Centocor insufficient to establish that J&J is either a "seller" or "manufacturer" of Remicade. Clearly, under these allegations, J&J does not design, formulate, produce, create, make, package, or label or construct Remicade. Indeed, Plaintiff's allegations of interactions between J&J and Centocor are no more than a strained attempt at linking the two entities and do not substantiate any colorable claim against J&J under the NJPLA or NJCFA. Therefore, J&J is disregarded as a defendant for the purpose of the Court's jurisdictional analysis. See Steel Valley, 809 F.2d at 1010 ("nominal or fraudulently joined parties may be disregarded").

### B.    Ortho-McNeil Pharmaceutical, Inc.

Plaintiff alleges one specific nexus between defendant OMP and Centocor to support her naming OMP as a defendant. Plaintiff alleges that OMP co-promoted Remicade, and co-sponsored clinical studies of the drug's safety and efficacy with Centocor prior to 2000, four years before Plaintiff was prescribed Remicade. Like the allegations pertaining to J&J, OMP did not design, research, develop, formulate, manufacture, package, distribute or sell Remicade. Accordingly, the Court finds that this alleged nexus between OMP and Centocor does not show that OMP is either a "seller" or "manufacturer" of Remicade, and therefore, OMP is not a proper defendant under the NJPLA or NJCFA.

### C.    Johnson & Johnson Pharmaceutical Research and Development, LLC

Plaintiff alleges the following nexuses between defendant PRD and Centocor to establish the propriety of naming both as defendants: PRD performed drug safety and surveillance (DSS)

7

functions for Centocor; predecessor of PRD, Janssen, commissioned post-marketing studies of adverse events associated with Remicade, which assessed Remicade for the purpose of modifying labels; and PRD initiated post-marketing surveillance studies.

The Court finds that these nexuses between PRD and Centocor also fail to establish that PRD is either a "seller" or "manufacturer" of Remicade. Taking these allegations as true, at most, PRD merely conducted certain studies in order for Centocor to carry out its decision with respect to labeling and post-marketing strategies. Plaintiff has not alleged any facts that demonstrate that PRD assisted Centocor in any manufacturing functions or selling the product. Accordingly, such conduct, as alleged, is nominal in nature. As such, PRD is not a proper defendant under the NJPLA or NJCFA.

**II. Express Warranty**

Plaintiff also asserts a cause of action against J&J, OMP, and PRD based on breach of an express warranty.

> The New Jersey UCC defines "express warranties" as: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818, 824 (3d Cir. 1999) (quoting N.J.S.A. § 12A:2-313(1)). Analogous to the analysis of whether J&J, OMP, and/or PRD constitute "sellers" within the meaning of the NJPLA and NJCFA, they similarly do not meet the definition of "sellers" under the New Jersey UCC. See N.J.S.A § 12A:2-103(1)(d) ("'Seller' means a person who

8

sells or contracts to sell goods"). As such, the Court finds that J&J, OMP, and PRD cannot be held liable to Plaintiff on an express warranty theory.

### III.     Attorney's Fees and Costs

Because the Court finds that J&J, PRD and OMP are not necessary defendants in this case and that remand is not warranted, the Court denies Plaintiff's request for attorney's fees and costs. See Mints v. Educational Testing Service, 99 F.3d 1253, 1258 (3d Cir. 1996); see also In re Briscoe, 448 F.23d at 216.

### CONCLUSION

For the reasons set fort above, Plaintiff's motion is denied without prejudice. Based upon the pleadings, J&J, PRD and OMP are either nominal defendants or fraudulently joined, and as such, they are not proper defendants in this case, and they are dismissed. As a result, the only defendant is Centocor, a Pennsylvania incorporation, who is diverse from Plaintiff, and may properly remove this case to this Court. However, should discovery reveal that any one of the New Jersey defendants assisted Centocor, or played a significant role, in manufacturing or selling Remicade, Plaintiff may move the Court to amend her Complaint, and accordingly, move for remand.

                                                            /s/  Freda L. Wolfson
                                                            The Honorable Freda L. Wolfson,
                                                            United States District Judge